**CHATEAU CHAUMONT CONDOMINIUM ASSOCIATION, a Colorado corporation, and Aspen Chateaux Development Company, a Colorado corporation, Plaintiffs-Appellants,**

v.

**ASPEN TITLE COMPANY, a Colorado corporation, and Carson Bell, Defendants-Appellees.**

No. 82CA0462.

Colorado Court of Appeals, Div. III.

Dec. 29, 1983.

Calista L. Peirce, Aspen, for plaintiffs-appellants.

Grant, McCarren & Bernard, William J. McCarren, Longmont, for defendants-appellees.

STERNBERG, Judge.

Plaintiffs, Chateau Chaumont Condominium Association (Association) and its managing agent, Aspen Chateaux Development Company (Development Company), appeal a judgment dismissing their claim against defendant Carson Bell for condominium assessments, and their claim against the defendant Aspen Title Company for release of funds deposited with it. We reverse and remand for a new trial.

Bell purchased a condominium unit in the Association building in Aspen in 1968. He signed a condominium declaration, one provision of which gave the Association the right to make quarterly assessments for common expenses.

In May 1973, the Association, the Development Company, and Bell entered into a new agreement which authorized the Development Company to make assessments for the Association and increased the rate of interest on unpaid assessments. Bell paid his assessments until 1974, when he objected to certain assessments and discontinued payments. In November 1976, when settlement negotiations proved fruitless, the Development Company recorded a lien against the unit for $12,069.57, the amount it alleged to be unpaid.

Bell wanted to sell his unit, but because of the lien, could not show clear title. After negotiations between the parties, Bell deposited with defendant Aspen Title Company an amount of money equal to the sum plaintiffs claimed was owed to them. The Title Company issued a commitment showing no encumbrances and Bell sold the unit on December 7, 1976.

On June 8, 1977, alleging it had complied with all terms of the agreement, the Development Company delivered to the Title Company a written request for the funds. The Title Company, upon Bell's instructions, refused to surrender the money.

The plaintiffs sued the Title Company seeking release of the funds. The Title Company subsequently deposited the funds into the registry of the court and was permitted to file a third-party complaint for indemnity against Bell. Bell filed claims

for an accounting, the recovery of expenses, release of the lien, and specific performance of the compromise agreement. The plaintiffs then filed claims against Bell alleging breach of contract and libel.

The parties submitted a signed pre-trial order containing factual and evidentiary stipulations which the trial court entered. The plaintiffs' exhibit H, consisting of copies of quarterly statements covering the alleged assessments owed by Bell from December 30, 1968, to the date of trial, was stipulated to by the parties and considered as admissible in the order.

At trial, despite the stipulation, defendants' counsel objected to the admission of exhibit H on hearsay grounds. The court initially ruled the exhibit to be admissible under the regularly conducted activity exception to the hearsay rule pursuant to CRE 803(6). However, at the conclusion of plaintiffs' case, in ruling on the defendants' motion to dismiss, the court held that exhibit H did not qualify under CRE 803(6) as a regularly conducted activity exception to the hearsay rule because the entries were not made at or near the time of the assessments; consequently, it ruled the exhibit to be inadmissible hearsay.

The defendants' motion to dismiss was granted as to plaintiffs' claims for assessments due and release of the escrow funds, but was denied as to the libel claim. Judgment was entered for the Development Company on the libel claim and damages of $1 were awarded. Bell was awarded the $12,069.57 deposited in the registry of the court, conditioned on the satisfaction of the libel judgment and satisfaction of the requirement for the payment of costs incurred by the Development Company with respect to the libel action. Bell's other claims were dismissed. The libel award is not a subject of this appeal.

## I.

▪ The defendants assert that the plaintiffs' motion for new trial was untimely. We do not agree.

Following trial, the court directed defendants' counsel to prepare findings of fact and conclusions of law and order of judgment (judgment). The plaintiffs requested and were granted 30 days from the date of the judgment to file the motion for new trial. Defendant's counsel prepared and transmitted the judgment to the trial court. The court signed the judgment on October 26, 1981; however, it was not filed in the district court until November 12, 1981. Plaintiffs' counsel was not present when the judgment was signed on October 26 and no notice thereof was given. When plaintiffs' counsel learned that the judgment had been entered, he moved and was granted an extension of time. The new trial motion was filed on February 9, 1982, within the time period granted by the court. The defendants argue that the trial court did not have jurisdiction to extend the time for filing the motion for new trial.

C.R.C.P. 58(a)(3) provides that if a judgment is entered when counsel is not present, the clerk must mail notice of the entry of judgment together with a copy of the order to that party. No such notice was mailed to plaintiffs. Thus, the time within which their motion for new trial was due did not begin to run, and the trial court had jurisdiction to extend the time for filing the new trial motion. *Cf. Poor v. District Court,* 190 Colo. 433, 549 P.2d 756 (1976).

## II.

▪ We next address plaintiffs' claim for the release of the funds Bell deposited with the Title Company. The depositary agreement, signed by Bell and the Title Company, became effective on December 8, 1976, referred to a deposit of $12,069.57 attributable to this condominium unit, and provided:

"The Aspen Title Company as depositary of the above-referenced funds is hereby instructed to pay all of the above-mentioned funds to Aspen Chateaux Development Company, Inc. as managing agent

for the Chateau Chaumont Condominium Association, Inc. after receipt of its written demand at any time after six (6) months from the date hereof, unless prior thereto Aspen Title Company has been instructed or requested to deposit said monies with the clerk of any Court in which there is litigation pending between Carson Bell and Chateaux [sic] Chaumont Condominium Association and/or Aspen Chateaux Development Company, their successors and/or assigns with respect to said monies, or there has been written authorization from Carson Bell or Aspen Chateaux Development Company to release said monies or any part thereof to the other parties as settlement or satisfaction of any claim and/or judgment any party may have against the other and an acknowledgment from the other party or parties of the satisfaction of any and all claims against the other party with respect to said funds."

Bell also executed an "Indemnity Agreement" for the benefit of the Title Company in which he was to be responsible for any attorney fees and/or judgments incurred by the Title Company related to the lien filed by plaintiffs.

Chateau Chaumont made written demand for the funds on June 8, 1977, but the Title Company, upon Bell's direction, refused to deliver the funds. On the record before us, we conclude that this refusal violated the terms of the depositary agreement.

Under the terms of that agreement, the Title Company was in possession of $12,069.57, deposited by Bell. The agreement specified that this money was to be delivered to the Development Company upon written demand for the funds, after six months had elapsed. There were intervening events specified in the agreement which could have affected the obligation to pay the funds to the plaintiffs, but none of them occurred. Thus, based on the record before us, we conclude that when the Title Company received the June 8 demand for payment, it had no choice or discretion. Its

sole duty was to pay the funds to the plaintiffs, who, even though they had not signed the agreement, were third-party beneficiaries under the contract. *See Fourth & Main Co. v. Joslin Dry Goods Co.*, 648 P.2d 178 (Colo.App.1982); *Restatement (Second) Contracts* § 304 (1981).

### III.

■ The plaintiffs assert that the court erred in not admitting exhibit H, which listed quarterly assessments made by the plaintiffs for common expenses. Such expenses included firewood, maintenance man hours, maid hours, etc. The court reasoned that these expenses were not incurred quarterly, but rather were on-going expenses. Because the compilations were made quarterly, and not at the time the expenses were necessarily incurred, the court concluded they were not made contemporaneously with the expenses and thus did not satisfy CRE 803(6). We disagree.

CRE 803(6) requires that a report sought to be introduced be made in the regular course of business, as a regular practice of the business, and "at or near the time" of the condition or event described in the report. *See G. Lilly, An Introduction to the Law of Evidence* § 69 (1978). *See also Great West Food Packers, Inc. v. Longmont Foods Co.*, 636 P.2d 1331 (Colo.App. 1981).

The import of the trial court's restrictive interpretation of CRE 803(6) would be that representatives of an apartment complex could not introduce records to prove a tenant had failed to pay monthly rent because, although the records were kept on a monthly basis and assessments were made monthly, the *expenses* which resulted in the assessments accrued daily.

Decisions from other jurisdictions lend support to a less restrictive interpretation. Summaries of computer printouts which listed current accounts and issued monthly were considered issued "within a reasona-

**1250** ■

ble time after the transaction reflected" in *American Oil Co. v. Valenti,* 179 Conn. 349, 426 A.2d 305 (Conn.1978). And, in *SCM Corp. v. Thermo Structural Products, Inc.,* 153 Ga.App. 372, 265 S.E.2d 598 (1980), a tax return concerning tax liabilities accrued throughout the year was deemed admissible when evidence was presented that the return was prepared annually in the normal course of appellee's business.

Here, the assessments were made quarterly. There was testimony from the president of Aspen Chateaux Company that the information was gathered at or near the time the expense was incurred by someone with personal knowledge of it, that the information was kept in the course of regularly conducted business, and that it was the regular practice of Aspen Chateaux to make such quarterly records. The fact that the expenses were not itemized to reflect more clearly which assessments were for common expenses and which were for the individual unit expenses goes to the weight of the exhibit, rather than to its admissibility under CRE 803(6).

The business records exception is intended to bring the realities of the business world into the courtroom. *Sears, Roebuck & Co. v. Merla,* 142 N.J.Super. 205, 361 A.2d 68 (App.Div.1976). Quarterly assessments were made and quarterly records kept. They were kept by someone with knowledge of the assessments made. The fact they were made in the regular course of Aspen Chateaux' business affords sufficient assurance that the facts recited are trustworthy. *U.S. Fidelity & Guaranty Co. v. Young Life Campaign, Inc.,* 42 Colo.App. 298, 600 P.2d 79 (1979).

The judgment is reversed and the cause is remanded for a new trial.

TURSI and BABCOCK, JJ., concur.