## CADLE COMPANY OF CONNECTICUT, INC. *v.* C.F.D. DEVELOPMENT CORPORATION ET AL.
### (15676)

O'Connell, Schaller and Stoughton, Js.

Argued December 10, 1996—officially released March 11, 1997

*Bruce L. Elstein,* with whom were *Stephen P. Wright* and, on the brief, *Henry Elstein,* for the appellants (defendant Jan E. Cohen et al.).

*Steven M. Basche,* with whom, on the brief, was *David M. Barry, Jr.* for the appellee (plaintiff).

STOUGHTON, J. This is an appeal from a judgment rendered on a jury verdict in favor of the holder of a promissory note against the guarantors. The principal issue is whether, under the circumstances of this case, the guarantors are liable on the guarantee if the maker of the note is not liable to the holder of the note. We conclude that they are not. We, therefore, reverse the judgment of the trial court with respect to the defendant guarantors.

The pleadings establish that by a note dated October 19, 1987, the named defendant, C.F.D. Development Corporation (CFD), promised to pay $1,900,000 plus interest and costs of collection to the order of Shawmut Home Bank (Shawmut). The defendants Arnold H. Foster, Jan E. Cohen and Mario DiRienzo III (guarantors) guaranteed payment and performance of the note by an instrument also dated October 19, 1987.[1] The note fell into default. The plaintiff, Cadle Company of Connecticut, Inc., alleged that the note was assigned to it, that it became the actual bona fide owner of the note and beneficiary of the guarantee, and that at the time it instituted action against CFD and the guarantors, there was due and owing the sum of $1,461,017.67 plus interest, reasonable attorney's fees and costs.

---

[1] The guarantee executed by the three guarantors was in the form of a letter to Shawmut, providing that each of the guarantors "unconditionally guarantees . . . the payment and performance from or by the Borrower of any and all obligations from the Borrower to the Lender. . . ." The guarantee defines obligations as "the Loan evidenced by the Note and any and all interest, commissions, obligations, liabilities, indebtedness, charges and expenses now or hereafter chargeable against the Borrower by the Lender or owing by the Borrower to the Lender with respect to the Loan, whether any of the foregoing are direct or indirect, joint or several, absolute or contingent, due or to become due, now existing or hereafter arising with respect to the Loan no matter how or when arising and whether under any present or future agreement or instrument between the Borrower and the Lender or otherwise, and the performance and fulfillment by the Borrower of all of the terms, conditions, promises, covenants, agreements and provisions contained in said Note or in any documents evidencing, relating to or secur-

The defendants denied that the amount claimed was due and that the plaintiff was the beneficiary of the guarantee. They alleged that they had no knowledge that Shawmut had exercised its option to declare all sums immediately due and payable and that the note and guarantee had been assigned to the plaintiff. The defendants also filed several special defenses, including a claim that Connecticut National Bank (CNB), a former holder, had impaired the value of the collateral by taking no action for an unreasonable time and allowed the value of the collateral to decrease significantly,[2] and a claim that CNB, by refusing to accept title to the collateral when its appraised value was in excess of $2,000,000, had breached its covenant of good faith and fair dealing.[3] None of the other special defenses went to the jury.

ing the Loan . . . or in any present or future agreement or instrument between the Borrower and the Lender with respect to the Loan."

[2] In the first special defense, the defendants claimed: "1. The C.N.B. ('Former Plaintiff') has impaired the collateral of the Defendants in this matter in that it has done nothing with regards to this action or the subject property for an unreasonable period of time and has allowed the value of the subject property to decrease significantly while the interest allegedly accruing as to the Defendants has continued to increase, during which time the Former Plaintiff's agent, receiver for the subject property, has done nothing with regards to renting, marketing or maintaining the subject property in a proper and value maximizing manner.

"2. Plaintiff purchased debt instruments upon which this action is based with knowledge of this defense or is chargeable with knowledge of this defense and therefore took the alleged debt instruments subject to this defense."

[3] In the second special defense the defendants claimed: "1. Due to the Former Plaintiff's actions in this matter with regards to its dilatory posture in same and its refusal to accept title to the subject property or respond to any of these Defendants' proposals as far back as 1988 when the property had an appraised value in excess of $2.0 million by the Former Plaintiff's own appraiser, it has breached the covenant of good faith and fair dealing which exists in every contract and due to the bad faith of the Plaintiff any judgment against the Defendants arising from the alleged indebtedness.

"2. Plaintiff purchased debt instruments upon which this action is based with knowledge of this defense or is chargeable with knowledge of this defense and therefore took the alleged debt instruments subject to this defense."

At the conclusion of the trial, the jury returned a plaintiff's general verdict form, showing a recovery for the plaintiff from each of the defendants in the amount of $1,539,114.32. In addition, the following interrogatories were answered as indicated and returned by the jury: "1. Do you find that Connecticut National Bank, after commencing its foreclosure action against the defendants and during the term of a Receiver appointed by the Court, took actual or constructive possession of the subject property (Phoenix Landing Condominiums)? Yes.

"2. Do you find that the bank acted unreasonably or failed to act reasonably in prosecuting the foreclosure action which it initiated in November, 1989? Yes.

"If your answer to question No. 2 is affirmative, please proceed to question No. 3. If your answer is 'No,' then you are to proceed to question 5.

"3. Do you find that the bank's conduct after bringing the foreclosure action was a proximate cause of a decline in value of the subject property (Phoenix Landing Condominiums)? No. . . .

"5. What is the total amount, including interest, that you find is due and owed to the plaintiff?:

"By Defendant C.F.D. Development Corporation, Inc., $0.

"By Guarantor Defendants (Cohen, Foster and DiRienzo) $1,539,114.32."

A motion to set aside the verdict, for entry of judgment and in arrest of judgment was filed on behalf of all defendants. In addition, CFD filed a separate motion to set aside the verdict and for judgment. The trial court granted the motion to set aside the verdict as against CFD, corrected the general verdict and rendered judgment for CFD. No appeal was timely taken from this

judgment in favor of CFD. The motion of the remaining defendants to set aside the verdict was denied and judgment was rendered against them on the verdict. Because the judgment of the trial court setting aside the verdict and rendering judgment in favor of CFD has not been appealed, it must stand. See *Southport Manor Convalescent Center, Inc.* v. *Foley*, 20 Conn. App. 223, 565 A.2d 878 (1989), rev'd on other grounds, 216 Conn. 11, 578 A.646 (1990); *Skut* v. *Hartford Indemnity Co.*, 142 Conn. 388, 114 A.2d 681 (1955). The guarantors, however, appeal from the trial court's judgment against them, claiming that, in the absence of any debt due from the makers on the note, the guarantors cannot be held liable.

There are three possible bases on which CFD could have prevailed. We consider each of those bases in turn to determine whether the judgment against the guarantors can be reconciled with the judgment for CFD and the responses to the interrogatories. If they cannot be reconciled, the judgment against the guarantors must be reversed. *Mallinson* v. *Black*, 41 Conn. App. 373, 381, 675 A.2d 937 (1996).

First, CFD would have prevailed if the jury had found that the plaintiff failed in its proof of the allegation that there was an amount due and owing from CFD to the lender on the note. In that case, there would be no basis for a judgment against the guarantors on the note or the guarantee because the liability of the guarantor is based on the liability of the debtor. *Murphy* v. *Schwaner*, 84 Conn. 420, 425, 80 A. 295 (1911); *Bernd* v. *Lynes*, 71 Conn. 733, 43 A. 189 (1899). If failure of the plaintiff's proof was the basis of the judgment for CFD, therefore, the guarantors would have had to prevail.

Second, a special defense might have been the basis for the judgment in favor of CFD. Two special defenses

were presented, and we address each in turn. The first special defense was impairment of the collateral. Logically, however, that could not have been the basis of the judgment in favor of CFD. The jury stated in its answer to interrogatory one that the lender took actual or constructive possession of the property only *after* the foreclosure action was commenced. In its answer to interrogatory three, the jury stated that the bank's conduct *after* the foreclosure was filed did *not* impair the value of the collateral. The collateral, therefore, was not impaired by the bank after it took either actual or constructive possession of the collateral. Thus the defense of impairment of collateral could not have been the basis of the judgment in favor of CFD regardless of the judgment with respect to the guarantors.

Finally, CFD might have prevailed because the defendants also proved that the bank violated the covenant of good faith and fair dealing. In answer to interrogatory two, the jury stated that the bank acted unreasonably or failed to act reasonably in prosecuting the foreclosure action; it is, therefore, possible that the special defense of violation of the covenant of good faith and fair dealing was the basis of the judgment for CFD. "Because a guarantor's contract is ancillary to that of the debtor, suretyship law [permits] the surety to assert the defenses or the discharge of his debtor unless the very purpose of the suretyship was to shift the risk of this event from the creditor to the surety," as in the event of bankruptcy or infancy of the debtor. *American Oil Co.* v. *Valenti*, 179 Conn. 349, 353, 426 A.2d 305 (1979). In the present case, shifting the risk of loss that might result from the lender's violation of the duty of good faith and fair dealing could not reasonably have been the "very purpose of the suretyship," because implicit in every contract is an obligation of good faith and fair dealing. *Gupta* v. *New Britain General Hospital*, 239 Conn. 574, 687 A.2d 111 (1996).

Neither infancy nor bankruptcy was involved here. See *American Oil Co.* v. *Valenti,* supra, 353. Thus, if violation of the covenant of good faith and fair dealing was the basis of the judgment for CFD, that special defense would have been available to the guarantors as well, and they would have had to prevail.

Because the judgment in favor of CFD has not been appealed and because the only two possible bases on which CFD could have prevailed necessitate that the guarantors also prevail, the judgment against the guarantors cannot stand.

The judgment with respect to the guarantors is reversed and the case is remanded with direction to render judgment in favor of the defendant guarantors.

In this opinion the other judges concurred.