CADLE COMPANY OF CONNECTICUT, INC. *v.* C.F.D.
DEVELOPMENT CORPORATION ET AL.
(SC 15678)

Berdon, Norcott, Palmer, McDonald and Peters, Js.

Argued November 6, 1997—officially released February 17, 1998

*Steven M. Bache,* for the appellant (plaintiff).

*Bruce L. Elstein,* with whom were *Stephen P. Wright* and, on the brief, *Henry Elstein,* for the appellees (defendant Jan E. Cohen et al.).

*Opinion*

PER CURIAM. The only issue in this certified civil appeal is the validity of a judgment that, with respect to the same financial transaction, simultaneously: (1) exonerates a debtor of liability; and (2) orders payment by the guarantors of that debt. The plaintiff, Cadle Company of Connecticut, Inc., brought an action for payment of a defaulted note against the promisor of the note, the named defendant, C.F.D. Development Corporation (debtor), and the note's guarantors, the defendants Arnold H. Foster, Jan E. Cohen and Mario DiRienzo III (guarantors). The jury returned a plaintiff's general verdict form but also, in response to interrogatories, found that the debtor owed the plaintiff zero and that the guarantors owed the plaintiff $1,539,114.32. Thereafter, on the debtor's motion, the trial court, *Gray, J.,* set aside, in part, the jury verdict for the plaintiff and rendered judgment thereon for the debtor.[1] The court denied the guarantors' motions to set aside the verdict.

The guarantors appealed to the Appellate Court and the plaintiff cross appealed. The Appellate Court dismissed the plaintiff's cross appeal as untimely. The validity of that dismissal is not before us. The court did, however, consider the merits of the guarantors' appeal, and directed that judgment be rendered in their

---

[1] We express no opinion about the propriety of the trial court's decision to render judgment for the debtor.

favor. *Cadle Co. of Connecticut, Inc.* v. *C.F.D. Development Corp.*, 44 Conn. App. 409, 415, 689 A.2d 1166 (1997). We then granted the plaintiff's petition for certification to appeal, limited to the following issue: "Under the circumstances of this case, did the Appellate Court properly conclude that the guarantors on the note held by the plaintiff were not liable on their guarantee?" *Cadle Co. of Connecticut, Inc.* v. *C.F.D. Development Corp.*, 241 Conn. 901, 693 A.2d 303 (1997).

Having examined the record on appeal and studied the briefs and the arguments of the parties, we have concluded that our grant of certification was improvident. Because of procedural irregularities at trial, the present proceeding does not afford us a proper opportunity to reexamine the thorny relationship between a guarantor's broadly phrased undertaking to ensure payment of a debt and such a guarantor's access to suretyship defenses. See, e.g., Restatement (Third), Suretyship and Guaranty pp. 156–57 and §§ 37–49 and 67 (1995); see generally *Packtor* v. *Seppala & AHO Construction Co.*, 231 Conn. 367, 370, 650 A.2d 534 (1994); *Shaham* v. *Capparelli*, 219 Conn. 133, 135, 591 A.2d 1269 (1991); *Lawler* v. *Lawler*, 212 Conn. 117, 119, 561 A.2d 128 (1989).

The appeal is dismissed.

BERDON, J., with whom, MCDONALD, J., joins, dissenting. I disagree with the majority's conclusion that certification to appeal was improvidently granted. Rather, I would reverse the judgment of the Appellate Court because of its faulty analysis of the jury's verdict, and order that judgment in favor of the plaintiff, Cadle Co. of Connecticut, Inc., against the defendant guarantors in the amount of $1,539,114.32 be reinstated.

The majority dismisses the appeal "[b]ecause of procedural irregularities at trial," but fails specifically to

identify those procedural irregularities that allegedly prevent it from examining "the thorny relationship between a guarantor's broadly phrased undertaking to ensure payment of a debt and such a guarantor's access to suretyship defenses."

The following facts relied upon by the Appellate Court are not in dispute. "The pleadings establish that by a note dated October 19, 1987, the named defendant, C.F.D. Development Corporation (CFD), promised to pay $1,900,000 plus interest and costs of collection to the order of Shawmut Home Bank (Shawmut). The defendants Arnold H. Foster, Jan E. Cohen and Mario DiRienzo III (guarantors) guaranteed payment and performance of the note by an instrument also dated October 19, 1987.[1] The note fell into default. The plaintiff, Cadle Company of Connecticut, Inc., alleged that the note was assigned to it, that it became the actual bona fide owner of the note and beneficiary of the guarantee, and that at the time it instituted action against CFD and the guarantors, there was due and owing the sum of $1,461,017.67 plus interest, reasonable attorney's fees and costs.

---

[1] The guarantee, in the form of a letter to Shawmut provided in relevant part: "[1] To induce Shawmut Home Bank (hereinafter referred to as the 'Lender') to make a loan in the amount of ONE MILLION NINE HUNDRED THOUSAND ($1,900,000.00) DOLLARS (the 'Loan') to CFD DEVELOPMENT CORP. (hereinafter referred to as the 'Borrower') which Loan is evidenced by a Promissory Note (the 'Note') bearing the effective date of October , 1987 and, in consideration thereof and of any loans, advances or financial accommodations heretofore or hereafter granted by the Lender to or for the account of the Borrower pursuant to said Note, *each of the undersigned Guarantors (hereinafter, and collectively if more than one, referred to as the 'Guarantor') unconditionally guarantees by this agreement (the 'Guaranty') the payment and performance from or by the Borrower* of any and all obligations from the Borrower to the Lender (the 'Obligations'). . . . [2] [T]hat the *liability of the Guarantor hereunder is direct and unconditional* and may be enforced without requiring the Lender first to resort to any other right, remedy or security . . . and [3] this Guaranty is, and shall be as to the Guarantor continuing, and shall not terminate unless and until all of the Obligations have been paid in full . . . ." (Emphasis added.)

"The defendants denied that the amount claimed was due and that the plaintiff was the beneficiary of the guarantee. They alleged that they had no knowledge that Shawmut had exercised its option to declare all sums immediately due and payable and that the note and guarantee had been assigned to the plaintiff. The defendants also filed several special defenses, including a claim that Connecticut National Bank (CNB), a former holder, had impaired the value of the collateral by taking no action for an unreasonable time and allowed the value of the collateral to decrease significantly, and a claim that CNB, by refusing to accept title to the collateral when its appraised value was in excess of $2,000,000, had breached its covenant of good faith and fair dealing. None of the other special defenses went to the jury.

"At the conclusion of the trial, the jury returned a plaintiff's general verdict form, showing a recovery for the plaintiff from each of the defendants in the amount of $1,539,114.32. In addition, the following interrogatories were answered as indicated and returned by the jury: '1. Do you find that Connecticut National Bank, after commencing its foreclosure action against the defendants and during the term of a Receiver appointed by the Court, took actual or constructive possession of the subject property (Phoenix Landing Condominiums)? Yes.

" '2. Do you find that the bank acted unreasonably or failed to act reasonably in prosecuting the foreclosure action which it initiated in November, 1989? Yes.

" 'If your answer to question No. 2 is affirmative, please proceed to question No. 3. If your answer is "No," then you are to proceed to question 5.

" '3. Do you find that the bank's conduct after bringing the foreclosure action was a proximate cause of a

decline in value of the subject property (Phoenix Landing Condominiums)? No. . . .

" '5. What is the total amount, including interest, that you find is due and owed to the plaintiff?:

" 'By Defendant C.F.D. Development Corporation, Inc., $0.

" 'By Guarantor Defendants (Cohen, Foster and DiRienzo) $1,539,114.32.' " *Cadle Co. of Connecticut, Inc.* v. *C.F.D. Development Corp.*, 44 Conn. App. 409, 410–12, 689 A.2d 1166 (1997).

Notwithstanding the inconsistency between the answers to the interrogatories, which found that CFD was not liable for any damages, and the general jury verdict, which, by entering judgment in favor of the plaintiff against all the defendants, found that both CFD and the guarantors owed the plaintiff $1,539,114.32, the trial court accepted the interrogatories and the general verdict in favor of the plaintiff and dismissed the jury.[2] The defendants jointly filed a motion to set aside the verdict, for entry of judgment and in arrest of judgment. "In addition, CFD filed a separate motion to set aside the verdict and for judgment. The trial court granted the motion to set aside the verdict as against CFD, corrected the general verdict and rendered judgment for CFD. No appeal was timely taken from this judgment in favor of CFD. The motion of the [guarantors] to

[2] The trial court incorrectly accepted the inconsistent interrogatory and general verdict forms, regardless of whether any party raised an objection. The correct procedure is to point out the inconsistency to the jury, reinstruct the jury on the law to the extent necessary and return the jury for further deliberations with a new set of interrogatories and verdict forms. See General Statutes § 53-223 ("The court may, if it judges the jury has mistaken the evidence in the action and has brought in a verdict contrary to the evidence, or has brought in a verdict contrary to the direction of the court in a matter of law, return them to a second consideration, and for the same reason may return them to a third consideration. The jury shall not be returned for further consideration after a third consideration.").

set aside the verdict was denied and judgment was rendered against them on the verdict." Id., 412–13.[3] The guarantors appealed to the Appellate Court, which reversed the judgment of the trial court. Id., 415. We granted certification to appeal on the following issue: "Under the circumstances of this case, did the Appellate Court properly conclude that the guarantors on the note held by the plaintiff were not liable on their guarantee?" *Cadle Co. of Connecticut, Inc.* v. *C.F.D. Development Corp.*, 241 Conn. 901, 693 A.2d 303 (1997).

The standard of review with respect to setting aside a jury verdict is clear. "In considering a motion to set aside the verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict. *Campbell* v. *Gould*, 194 Conn. 35, 41, 478 A.2d 596 (1984). The trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be indulged in favor of its correctness. *Herb* v. *Kerr*, [190 Conn. 136, 139, 459 A.2d 521 (1983)]; *Katsetos* v. *Nolan*, [170 Conn. 637, 656, 368 A.2d 172 (1976)]. This is so because '[f]rom the vantage point of the trial bench, a presiding judge can sense the atmosphere of a trial and can apprehend far better than we can, on the printed record, what factors, if any, could have improperly influenced the jury.' *Birgel* v. *Heintz*, 163 Conn. 23, 26, 301 A.2d 249 (1972) . . . ." (Citation omitted.) *Mather* v. *Griffin Hospital*, 207 Conn. 125, 139, 540 A.2d 666 (1988).

After reviewing three possible bases on which CFD could have prevailed at trial, the Appellate Court concluded that the verdict against the guarantors could not be reconciled with the verdict for CFD and the

[3] Because the trial court's granting of the motion to set aside the verdict as against CFD and its rendering judgment in favor of CFD has not been appealed, that judgment must stand. *Skut* v. *Hartford Accident & Indemnity Co.*, 142 Conn. 388, 114 A.2d 681 (1955).

responses to the interrogatories. Applying flawed reasoning,[4] the Appellate Court concluded: (1) that the jury could have found that CFD had paid the note; and (2) that the special defense that CNB had violated the covenant of good faith and fair dealing by acting unreasonably or failed to act reasonably in prosecuting the foreclosure action was proven by the jury's answer to interrogatory two. *Cadle Co. of Connecticut, Inc.* v. *C.F.D. Development Corp.*, supra, 44 Conn. App. 413–15. The Appellate Court then concluded that because both of these defenses would also apply to the guarantors, the judgment against the guarantors could not stand. Id., 415.

I reject the Appellate Court's conclusions. First, the guarantors failed to allege[5] or introduce any evidence at trial that the note was paid. Practice Book § 164; *Connecticut Bank & Trust Co.* v. *Dadi*, 182 Conn. 530, 438 A.2d 733 (1980). Indeed, at oral argument before this court, counsel for the guarantors conceded it was not paid. Second, proof of the special defense of the covenant of good faith and fair dealing in prosecuting the foreclosure action must be rejected because the jury found in the third interrogatory that CNB's conduct after bringing the foreclosure was not the proximate cause of the decline of the value of the security. Indeed,

---

[4] The Appellate Court correctly rejected another hypothesis—that the special defense of impairment of collateral was proven by the jury's answer to interrogatory number one. *Cadle Co. of Connecticut, Inc.* v. *C.F.D. Development Corp.*, supra, 44 Conn. App. 414. I agree with the Appellate Court that this was not a possible finding because of the jury's answer to interrogatory number three, which stated the jury did *not* "find that the bank's conduct after bringing the foreclosure action was a cause of the decline in the value of the" collateral.

[5] Practice Book § 164 provides in relevant part: "No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements but show, notwithstanding, that he has no cause of action, must be specially alleged. Thus . . . payment (even though nonpayment is alleged by the plaintiff) . . . must be specially pleaded . . . ."

the instructions for the second interrogatory specifically led the jury to the third interrogatory in which it concluded that CNB's conduct was harmless.[6]

It is fundamental that the specific contract provisions between the parties control the extent of the guarantee. Restatement (Third), Suretyship and Guaranty § 6 (1996) ("[e]ach rule in this Restatement stating the effect of suretyship status may be varied by contract between the parties subject to it"). Indeed, in *American Oil Co.* v. *Valenti*, 179 Conn. 349, 426 A.2d 305 (1979), this court, in a unanimous decision, held that a judgment of nonsuit rendered for the principal debtor did not discharge the liability of one who undertook by contract to guarantee absolutely the payment of the outstanding debt. As a result of the disciplinary nonsuit, judgment was rendered in favor of the principal debtor, which, like this case, was not appealed by the plaintiff. In *American Oil Co.*, Justice Peters, relying upon her own bar journal article, wrote: "The mere fact that a suit against the principal debtor resulted in a nonsuit cannot be a defense to a surety who has agreed to pay regardless of whether and when demand for payment is made upon another. See Peters, A Negotiable Instruments Primer 64–65 (1974)." *American Oil Co.* v. *Valenti*, supra, 352.

The guarantor in *American Oil Co.*, James Valenti, undertook "[o]n the contract of guaranty . . . as a 'primary obligation,' to guarantee 'absolutely and unconditionally . . . the prompt payment of all sums of money

---

[6] The interrogatories relevant to the covenant of good faith and fair dealing, the interrogatory instructions and the jury's answers were as follows:

"2. Do you find that the bank acted unreasonably or failed to act reasonably in prosecuting the foreclosure action which it initiated in November, 1989? [Answer] Yes.

"If your answer to question No. 2 is affirmative, please proceed to question No. 3. . . .

"3. Do you find that the bank's conduct after bringing the foreclosure action was a proximate cause of a decline in value of the subject property (Phoenix Landing Condominiums)? [Answer] No. . . ."

. . . unpaid by the principal debtor . . . .' The contract expressly waived, inter alia, 'failure upon the part of the Obligee . . . to make demand or use diligence.' On both documents [the note and the guarantee], therefore, James Valenti agreed to be a surety, a person who would be primarily liable for payment without regard to any prior demand for payment from [the principal debtor]." Id.

In my view, the language of the guarantee in this case is at least as extensive as that in *American Oil Co.*[7] The guarantee here provided in relevant part that "each of the undersigned Guarantors . . . unconditionally guarantee[d] by [the Guaranty] the payment and performance from or by the Borrower of any and all obligations from the Borrower to the Lender (the 'Obligations')." Moreover, the guarantors also agreed to be primarily liable for payment: "[T]he liability of the Guarantor[s] hereunder is direct and unconditional and may be enforced without requiring the Lender first to resort to any other right, remedy or security . . . ." Finally, the guarantors agreed that their obligation did not terminate until the lender had been paid in full: "[T]his Guaranty is, and shall be as to the Guarantor continuing, and shall not terminate unless and until all of the Obligations have been paid in full; and that if there is more than one Guarantor, the liability of the Guarantors hereunder shall be joint and several."

In light of the guarantors' concession that the note was not paid, the flawed analysis of the second and third jury interrogatories, and the broad and unconditional language of the guarantee, I would reverse the Appellate Court and direct that the judgment of the trial court awarding the plaintiff damages in the amount of $1,539,114.32 be affirmed.

Accordingly, I dissent.

---

[7] See footnote 1 of this dissent.