[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action to collect a promissory note brought by Cadlerock Joint Ventures, substitute plaintiff for Cadle Co. as successor assignee from the original plaintiff, Shawmut Bank Connecticut, N.A. against the maker, MGMR Associates (MGMR), a Connecticut general partnership, and four individuals, George W. Hamblet, II, Marilyn A. Hamblet, Robert P. Hamblet and Marilyn D. Hamblet. The promissory note dated December 29, 1989 in the amount of $430,000 was executed for MGMR by all of the four named partners to the order of the Connecticut National Bank, accompanied by a separate guaranty of date by the four Hamblets, and secured by a mortgage on premises located at 239 Weston Street, Hartford.
The original complaint dated August 18, 1995 brought by Shawmut Bank, assignee of Connecticut National Bank, consists of four counts, the first count seeking foreclosure of the mortgage was subsequently withdrawn. The second count seeks collection against MGMR, the third count seeks collection from the four Hamblets under the guaranty and the fourth count seeks collection from the four Hamblets as partners in MGMR. Substituted plaintiff seeks to collect the principal balance of the note plus accumulated interest together totaling $627,030.19 plus attorneys fees.
Defendants MGMR and the four Hamblets in their answers have generally left the plaintiff to its proof but special defenses have been filed separately by MGMR and two of the four Hamblets. George W. Hamblet III and Marilyn A. Flamblet in a special defense dated February 15, 1997 allege that they offered to convey the mortgaged premises to the bank where the fair market value exceeded the balance due on the note and the failure of the bank to accept such offer amounted to a breach of good faith and fair dealing. On February 17, 1999 MGMR asserted a special defense that the bank's failure to act after declaring a default against defendants under the terms of the mortgage and mortgage CT Page 13612 note, at a time when the value of the mortgaged property far exceeded the amounts due under the note, amounted to laches and resulted in an impairment of its security.
Trial took place before this court on February 18 and 19, and March 16, 1999 with stipulations of fact filed on March 15 and April 22, 1999. Subsequently, the parties entered into settlement discussions among themselves, requesting that the court refrain from rendering any decision. Thereafter, settlement discussions having "reached an impasse" the parties extended the time by which this court was required to render a decision until October 15, 1999.
 -I-
Subsequent to trial, on March 26, 1999 plaintiff filed a motion to cite in two of the defendants, Robert P. Hamblet and Marilyn D. Hamblet, claiming it had recently obtained information of their residence in Sheffield, Massachusetts. Plaintiff maintains that proper service was already made on these defendants under the long arm statute but desires to cite them in to remove any question of proper service. When the complaint in this case was first served the sheriff was unable to find or serve these two defendants and the plaintiff withdrew its complaint against them. Subsequently, on February 12, 1996 the plaintiff moved to cite in said defendants and this motion was granted on December 30, 1996. (Freed, J.). On April 4, 1997 this court (Aurigemma, J.) granted plaintiff's application for an order of notice and in accordance with this order, notice of this action was published in the Portsmouth Herald, Portsmouth, New Hampshire. These defendants have never appeared in this action and on June 18, 1997 a default was entered for their failure to appear.
MGMR has objected to this motion to cite in and even though its standing to do so has been questioned, plaintiff's motion is denied because these defendants have already been defaulted and the motion is untimely. It is noted that no motion to challenge jurisdiction of this court over these defendants have ever been filed.
 -II-
The parties have stipulated that the loan was in default on July 1, 1993, that the plaintiff's predecessor, the Cadle Company CT Page 13613 acquired the loan in a bulk purchase and sale transaction and that the outstanding principal balance is $401,631.07, which has remained unchanged since December 9, 1993. The note was executed by MGMR, a partnership, by its four general partners, the four named Hamblets, who it is stipulated, individually guaranteed payment of the note, a true copy of the written guaranty having been introduced into evidence.
A question was raised by defendants about the binding effect of the guaranty as respects the present plaintiff because there was no proof that the guaranty agreement was included with the transfer of the note, but any such question has been resolved by the stipulation that the guaranty agreement (Plaintiff's Exhibit 3) was a true copy of the original. Both the note and the guaranty agreement provide that all rights conferred under the guaranty "shall vest in and be enforceable by lender, its successors and assigns." There has been sufficient proof that the individual Hamblets are individually responsible to the present plaintiff for payment of the note under the guaranty agreement.
In addition, it is clear that under Connecticut law, the four general partners of MGMR are jointly liable for the debts and obligations of the partnership. Bentz v. Halsey,54 Conn. App. 609, 618 (1999). General Statutes § 34-53 (repealed effective July 1, 1997); Dayco Corporation v. Fred T. Roberts Co.,192 Conn. 497, 501 (1984). It is found that the four Hamblets are individually and collectively liable for payment of the note, both under the guaranty agreement and general partnership law.
 -III-
Both MGMR and individual defendants George W. Hamblet and Marilyn A. Hamblet have raised a number of special defenses all of which are equitable in nature sounding in breach of "good faith and fair dealing" and laches. Defendants seek not so much to defeat the action on the promissory note but rather to reduce the interest, late charges and attorneys fees which have accumulated to date. These claims may be summarized as follows:
1. In July, 1993 after default was declared, defendants offered to convey the premises to Shawmut Bank, then holder of the note and mortgage, in lieu of foreclosure, when the fair market value of the premises exceeded the debt, but Shawmut never replied to their offer, and this failure impaired the security. CT Page 13614
2. Failure of the Shawmut Bank to institute any action to foreclose the mortgage or collect on the note until August 18, 1995, more than two years after default, in view of the diminishing value of the premises violated the implied covenant of good faith and fair dealing.
3. Shawmut Bank knew there was an environmental pollution problem on the premises because of prior discharges from underground storage tanks long before default was declared, spent almost six years commissioning environmental studies and estimated cleanup costs which added nothing to its knowledge, and its failure to take any action for a long period of time amounted to laches which damaged the defendants by permitting the delinquency in property taxes to increase and the fair market value of the premises to decrease.
4. When Cadle Company purchased the delinquent note and mortgage from Shawmut bank it was part of a bulk sales package, for which a fair purchase price allocation was between $140,000 and $175,000 and it would be inequitable and unconscionable for plaintiff to realize in this action a value more than three and one half times its purchase price.
 -IV-
The defendants claim that their collateral, that is the mortgaged premises, was impaired by the bank and that under General Statutes § 42a-3-605, that if one entitled to enforce an instrument impairs the value of the collateral securing the instrument, the obligation of an accommodation party, i.e. guarantor, is discharged to the extent of such impairment. Defendants cannot prevail on this claim for several reasons.
Paragraph 9 of the mortgage note contains broad language in which the makers consent to "the release, surrender, exchange or substitution of the security."
The statute cited can apply to the defendants only in their role as guarantor but even under this statute our Supreme Court has stated that the defense of impairment of collateral requires (1) actual or constructive possession by the plaintiff and (2) conduct which is the proximate cause of the decline in value of the property. Connecticut National Bank v. Douglas, 221 Conn. 530
(1992). Neither of these requirements were proven by defendants or took place in this case. CT Page 13615
 -V-
Defendants concede that the bank had no obligation to accept a deed of the premises in lieu of foreclosure of the mortgage or an action on the note but claim that Shawmut's failure to act and its delay in taking action against the defendants should prevent it from obtaining relief to which it is not equitably entitled. Testimony at the trial and voluminous exhibits introduced make it clear that the bank's reluctance to take title to the premises or to commence a foreclosure action was attributable in large part to its concern over becoming involved with an expensive environmental pollution problem in the ground on which the premises were located. It is not clear when the bank first became aware of the problem or whether its predecessor in title and original mortgagee, The Connecticut National Bank was fully aware of the problem when the mortgage originated. When Shawmut declared the note in default on April 26, 1993, for nonpayment of city taxes, the principal balance on the note amounted to $404,414.70 plus $2,159.69 interest. At that time the bank had in its file an appraisal for the premises in the amount of $700,000 which would have exceeded the entire balance on the note plus delinquent taxes. Other real estate appraisals introduced into evidence show a fair market value ranging from $450,000 to $560,000 over the ensuing period, but it was clear that the value and marketability of the premises was rapidly decreasing. Eventually, the premises reverted to the City because of the tax delinquency.
In Hamm v. Taylor, 180 Conn. 491, 497 (1980) our Supreme Court stated: "We affirm that a trial court in foreclosure proceedings has discretion, on equitable considerations and principles, to withhold foreclosure or to reduce the amount of the stated indebtedness."
In Cadle Co. of Connecticut, Inc. v. C.F.D. DevelopmentCorp. , 44 Conn. App. 409, 414 (1997) our appellate court explicitly recognized the validity of a special defense alleging that a bank had violated the covenant of good faith and fair dealing.
There are several superior court decisions supporting the validity of such a defense based on a theory of jurisprudence that in every contract there is an implied covenant of good faith and fair dealing. See Lafayette Bank Trust Co. v. Jarvis, 6 CT Page 13616 CSCR 924 (September 27, 1991, Spear, J.) which declined to strike a plaintiffs claim against a bank alleging violation of such an implied covenant and People's Bank v. Miller, 8 CSCR 432 (April 6, 1993, Lewis, J.) which recognized that a superior court had used its equitable power in a foreclosure proceeding to limit interest and late charges that could be collected on a deficiency judgment, citing Citicorp Mortgage Inc. v. Upton,42 Conn. Sup. 302 (1992).
In the latter case, Judge Freed disallowed "excessive" interest charges, penalties and costs being charged to defendants in an action for a deficiency judgment in a mortgage foreclosure case. He found in that case that plaintiff's failure to respond to defendants request to take title to the premises was "both a breach of good faith and fair dealing and inequitable conduct on its part" and disallowed certain charges and interest as requested.
Other superior court cases recognizing the validity of a "good faith and fair dealing" special defense are GF MortgageCorp. v. Gilmore, judicial district of Stamford, No. CV 95 0144488 (November 6, 1995, D'Andrea, J.); Bank of BostonConnecticut v. Capitol West Associates Limited Partnership, et.al., 7 Conn. L. Rptr. 767 (July 21, 1992, Freed, J.). While there are several superior cases holding a contrary view, it appears to be a sound principle that in a foreclosure case, equitable relief can be accorded even when the action is solely to collect the mortgage note.
 -VI-
Plaintiff has argued that even if such a special defense is deemed worthy and sufficient at law it has not been proven because a large part of the delay was caused by the fact that MGMR was a debtor in a Chapter 11 bankruptcy proceeding from the Fall of 1993 through Spring of 1995. While this may explain part of the banks delay, it does not justify the entire delay which was due primarily to the reluctance of the bank to take on the environmental pollution problems on the premises. Moreover, it is not clear whether the bankruptcy was a causal factor in the delay or the prior delay a causal factor in the bankruptcy.
It is found that after considering the action and lack of action of the Shawmut Bank as a whole, its failure to consider seriously the offer of the Defendants to give up the premises and CT Page 13617 its delay in bringing an action when the value of the premises was rapidly decreasing, violated the implied covenant of good faith and fair dealing.
These violations by the bank do not bar the primary action to collect the note by its subsequent assignees but warrant a massive reduction in the amount of interest awardable to the plaintiff, which has been stipulated to be $225,399.12 through February 19, 1999. The parties have already stipulated that interest accruing on the loan from June 1, 1993 through December 9, 1993 has been waived. Because it was inequitable for the bank to fail to take some action within six months after the stipulated date of default, only six months interest at the stipulated rate of 10.69%, in the sum $21,467.31, is awarded to the plaintiff in addition to the interest due on the date of default in the amount of $2,159.69.
Judgment may enter against all of the named defendants in the amount of $425,258.07 consisting of $401,631.07 principal and interest of $23,627.00 together with such attorneys fees which may be approved by this court, after hearing any objections to the affidavit filed by Anthony Gilmore.
Jerry Wagner Trial Judge Referee