PATRICK BOVAT *v.* CITY OF WATERBURY ET AL.
(SC 16482)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued September 13—officially released November 20, 2001

*Charles E. Oman III*, with whom, on the brief, was *Bethany K. Karas*, for the appellant (named defendant).

*Robert S. Kolesnik*, with whom, on the brief, was *Maureen E. Norris*, for the appellee (plaintiff).

*Opinion*

KATZ, J. The named defendant, the city of Waterbury (defendant), appeals[1] from the judgment of the trial court, rendered after a jury trial, in favor of the plaintiff, Patrick Bovat, in his action to recover damages for personal injuries he sustained in an automobile accident that resulted from the defendant's breach of its duties under the municipal defective highway statute, General Statutes § 13a-149.[2] On appeal, the defendant claims

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[2] General Statutes § 13a-149 provides: "Damages for injuries by means of defective roads and bridges. Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair. No action for any such injury sustained on or after October 1, 1982, shall be brought except within two years from the date of such injury. No action for any such injury shall be maintained against any town, city, corporation or borough, unless written notice of such injury and a general description of the same, and of the cause thereof and of the time and place of its occurrence, shall, within ninety days thereafter be given to a selectman or the clerk of such town, or to the clerk of such city or borough, or to the secretary or treasurer of such corporation. If the injury has been caused by a structure legally placed on such road by a railroad company, it, and not the party bound to keep the road in repair, shall be liable therefor. No notice given under the provisions of this section shall be held invalid or insufficient by reason of an inaccuracy in describing the injury or in stating the time, place or cause of its occurrence, if it appears that there was no intention to mislead or that such town, city, corporation or borough was not in fact misled thereby."

that the trial court improperly denied both its motion to set aside the verdict and its motion for remittitur. The defendant's motion to set aside the verdict had been predicated on the following claimed improprieties: (1) the jury's responses to written interrogatories finding liability, based on both design defect and defect in repair or maintenance, demonstrated a misapprehension of applicable legal principles; (2) the plaintiff failed to produce evidence that the defects were present from the time the road was built; (3) no reasonable jury could have found that the defendant had been the sole proximate cause of the plaintiff's injuries; (4) the jury was instructed on principles of causation that were applicable to a claim of ordinary negligence; and (5) the trial court precluded the defendant from introducing evidence of a settlement between the plaintiff and the operator of the vehicle in which the plaintiff was riding to contradict the plaintiff's denial that he had made a previous claim against the operator. With respect to the motion for remittitur, the defendant asks this court to reconsider the rule, as articulated in *Peck* v. *Jacquemin*, 196 Conn. 53, 491 A.2d 1043 (1985), applied by the trial court that barred it from automatically reducing the plaintiff's award of damages by amounts received by way of settlements from third parties. We reject the defendant's claims and affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of October 4, 1993, the plaintiff, his friend Steven D. Sylvester and two others, drove from the plaintiff's house to meet friends for dinner at the Pontelandolfo Club on Farmwood Road in Waterbury. Farmwood Road is a city highway, owned and maintained by the defendant. Sylvester drove his car, with the plaintiff seated in the front passenger's seat and the other two individuals seated in the rear. It was dusk as the car approached Farmwood Road. As

Sylvester drove in the eastbound lane on Farmwood Road, one of the passengers warned him that he should slow down because the road ahead was narrow and curvy. As the car approached a sharp curve in the road at the top of a hill, Sylvester slowed the car from thirty miles per hour to approximately fifteen to twenty miles per hour. At that moment, an oncoming vehicle came over the hill from the westbound lane. The lights of that vehicle temporarily blinded Sylvester, and both he and the plaintiff thought that the oncoming vehicle was crossing into their lane. While the oncoming vehicle never left its travel lane, Sylvester braked and veered his car to the right. His car skidded partly off the road and the car's right front side struck a utility pole owned by Connecticut Light and Power Company (power company)[3] that was located a short distance from the edge of the road.

As a result of the accident, the plaintiff required surgery to repair a "shattered" elbow,[4] which involved the insertion of two metal plates and screws to hold the bone together. The plaintiff was hospitalized for six days and received physical therapy for one and one-half months. As a consequence of the accident, the plaintiff has a 15 percent permanent partial disability of his right arm.

The plaintiff filed this action, alleging negligence against the power company and a violation of the defendant's obligations under § 13a-149. See footnote 2 of this opinion. Prior to trial, the plaintiff withdrew his claim against the power company after receiving a $10,000 settlement. In his subsequent amended complaint, the plaintiff alleged that the defendant's defective design and maintenance of the highway caused his

---

[3] Connecticut Light and Power Company originally was a defendant in this action but is not involved in this appeal.

[4] The plaintiff was diagnosed with a "severe unstable supracondylar fracture of the right distal humerus with anterocondylar involvement."

injuries in that: (1) the defendant maintained the road without proper lighting; (2) the road was not reasonably safe for the uses or purposes intended; (3) the defendant maintained the road in a state of disrepair, causing it to be dangerous and hazardous; (4) the layout, grade or design of the road was improper; (5) the road was designed with an extremely sharp curve with a utility pole placed at the apex of the curve at the edge of the roadway, thereby creating a dangerous and hazardous condition; (6) the defendant failed to remedy the stated conditions when it was aware or should have been aware of them in the performance of routine inspections; and (7) the defendant failed to warn travelers of the dangerous and hazardous conditions.

Shortly after testimony began, the trial court conducted a hearing on the plaintiff's motion in limine to preclude the defendant from eliciting testimony regarding settlements with, or sums paid by, both the power company and Sylvester's insurance company, Liberty Mutual Insurance Company (Liberty Mutual), as well as evidence regarding claims against either of those parties. The defendant sought to introduce this evidence to rebut the plaintiff's contention that the defendant was the sole proximate cause of the plaintiff's injuries. In particular, the defendant contended that a claim by the plaintiff against Liberty Mutual was admissible to prove that the plaintiff initially had asserted that Sylvester's negligence had caused the accident.

The trial court denied, in part, the plaintiff's motion regarding the evidence related to the power company, ruling that the original complaint, the power company's answer, and the plaintiff's withdrawal of his action against the power company were evidentiary admissions relevant to whether a claim had been made against the power company. The trial court, however, precluded the defendant from eliciting testimony regarding a settlement or release between the plaintiff and the

power company.[5] Before ruling on the motion with respect to evidence from Liberty Mutual, the trial court inquired whether the defendant had any evidence of a claim against Sylvester or Liberty Mutual, such as a claim letter from the plaintiff or his counsel. The defendant responded that it had no such evidence. The trial court subsequently granted the plaintiff's motion to exclude evidence regarding any settlement with, any funds paid by, or a release obtained by Liberty Mutual. The trial court did, however, permit the defendant to cross-examine the plaintiff about whether he had made a claim against Liberty Mutual. The plaintiff denied that either he or anyone on his behalf, to the best of his knowledge, had made a claim against any party other than the defendant and the power company.

The plaintiff presented expert witness testimony from John Fitzgerald, a licensed professional engineer and land surveyor, on the condition of Farmwood Road at the site of the accident. Fitzgerald testified to the following information. Farmwood Road was constructed running east to west on a hill sloping down from north to south. There was a 260 foot curvature in the road where the accident occurred, which Fitzgerald characterized as "very sharp . . . ." At this curve, vehicles traveling in either direction would be ascending a 6 percent grade. The two grades meet in a parabolic curve that blends in at the point of the crest. Due to these factors, an operator traveling eastbound would be affected more adversely than one traveling westbound because a westbound vehicle's lights would shine upward as it ascended the grade. As the westbound vehicle traveled over the crest, the vehicle's lights would fan across the front of an oncoming eastbound vehicle, shining its lights directly into that vehicle. In addition, as the eastbound operator approaches the curve, the lane narrows from a width of eight feet to

---

[5] The defendant does not challenge that ruling in this appeal.

five feet eight inches at the site of the accident.[6] At the time of Fitzgerald's examination of the site, the eastbound lane was partly covered with dirt that had accumulated over time. The utility pole at the apex of this curve was situated three feet four inches from the edge of the dirt-packed portion of the road, as compared to a distance of five feet for another utility pole that was situated at the wider portion of the road. There were no signs warning drivers of the upcoming curve or any other traffic control signs posted on the road. Fitzgerald concluded that Farmwood Road was not reasonably safe at the site of the accident due to its curvature, narrow lanes, sight obstruction, pitch and grade. When asked whether the road had been constructed in the aforementioned manner, Fitzgerald responded: "Yes. It certainly was . . . . [It] did not exhibit any new construction."

At the conclusion of the plaintiff's case-in-chief, the defendant asked the court to consider the testimony of Michael DeStefano, a team manager in the claims department for Liberty Mutual, on the disputed issue of whether there had been a claim by the plaintiff against Sylvester. By agreement of the parties, DeStefano's testimony was heard outside the presence of the jury as an offer of proof. Specifically, the defendant sought to use DeStefano to introduce documents contained in Liberty Mutual's file regarding Sylvester as well as computer generated records pertaining to his file. DeStefano had not obtained the documents directly from the pertinent file; rather, he had received them from the defendant's counsel, who had procured them from counsel for the power company.[7]

---

[6] Fitzgerald testified that most highway lanes today are constructed at a width of twelve feet. The plaintiff and Sylvester both testified, however, that, despite the narrow width of the eastbound lane, there would have been sufficient room for Sylvester to negotiate the curve if the oncoming vehicle had remained in its travel lane.

[7] Apparently, counsel for the power company had subpoenaed the documents in preparation for a deposition when it was still a party to the case.

The plaintiff objected to the evidence as lacking proper foundation and as inadmissible settlement evidence. The trial court ruled that the records were inadmissible through the particular witness offered by the defendant but acknowledged the possibility that the documents could be admitted if offered in another manner.

After the plaintiff rested his case, the defendant moved for a directed verdict.[8] The trial court denied the defendant's motion and, thereafter, submitted the case to the jury. The jury found in favor of the plaintiff, and indicated in its responses to written interrogatories that the plaintiff had proven the existence of both a defect in the design of the road as well as a defect in the maintenance or repair of the road. The jury awarded the plaintiff $33,000 in economic damages and $47,000 in noneconomic damages, for a total award of $80,000. The defendant filed a motion to set aside the verdict, a motion for remittitur, and a motion to reduce the verdict due to collateral source payments received by the plaintiff. The trial court denied both the defendant's motion to set aside the verdict and its motion for remittitur, but granted the defendant's motion to reduce the verdict and reduced the award of economic damages by $14,370.97 in accordance with a stipulation by the parties.[9] Thereafter, the trial court rendered judgment

[8] In its motion, the defendant claimed that the plaintiff had failed to meet his statutory burden of proof under § 13a-149 in that: (1) there was no evidence from which a jury could determine that a design defect was present from the time the road was constructed; (2) there was insufficient evidence as to the defendant's actual or constructive notice of the defect; and (3) there was insufficient evidence that the alleged road defect was the sole proximate cause of the plaintiff's injuries.

[9] It appears from the parties' stipulation that this reduction was based on the amount that had been paid by the plaintiff's health insurance coverage for his medical costs ($23,745.97) less the amount that had been paid by the plaintiff and his employer for monthly insurance premiums ($375) for the twenty-five months he received treatments related to his injury.

for the plaintiff in the amount of $65,629.03. This appeal followed. We affirm the judgment of the trial court.

We begin by setting forth the standard of review that governs the review of a trial court's denial of a motion to set aside the verdict. Such review "involves a determination of whether the trial court abused its discretion, according great weight to the action of the trial court and indulging every reasonable presumption in favor of its correctness; *Labatt* v. *Grunewald,* 182 Conn. 236, 240–41, 438 A.2d 85 (1980); *Levitz* v. *Jewish Home for the Aged, Inc.,* 156 Conn. 193, 198, 239 A.2d 490 (1968); since the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence. *Loomis* v. *Perkins,* 70 Conn. 444, 447, 39 A. 797 (1898)." *Palomba* v. *Gray,* 208 Conn. 21, 24–25, 543 A.2d 1331 (1988); accord *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.,* 255 Conn. 20, 32, 761 A.2d 1268 (2000); *Cadle Co. of Connecticut, Inc.* v. *C.F.D. Development Corp.,* 243 Conn. 667, 673, 706 A.2d 975 (1998). "[A trial court may] set aside a verdict where it finds it has made, in its instructions, rulings on evidence, or otherwise in the course of the trial, a palpable error which was harmful to the proper disposition of the case and probably brought about a different result in the verdict." *Munson* v. *Atwood,* 108 Conn. 285, 288, 142 A. 737 (1928).

Before considering the defendant's claims under this standard of review, we briefly set out the legal parameters of a claim against a municipality under § 13a-149. "To prove a breach of statutory duty under this state's defective highway statutes, the plaintiff must prove by a preponderance of the evidence: (1) that the highway was defective as claimed; (2) that the defendant actually knew of the particular defect or that, in the exercise of its supervision of highways in the city, it should have known of that defect; (3) that the defendant, having actual or constructive knowledge of this defect, failed

to remedy it having had a reasonable time, under all the circumstances, to do so; and (4) that the defect must have been the sole proximate cause of the injuries and damages claimed . . . ." (Internal quotation marks omitted.) *Ormsby* v. *Frankel*, 255 Conn. 670, 675–76, 768 A.2d 441 (2001); accord *Prato* v. *New Haven*, 246 Conn. 638, 642, 717 A.2d 1216 (1998); *Lukas* v. *New Haven*, 184 Conn. 205, 207, 439 A.2d 949 (1981). With these principles in mind, we turn to the defendant's claims.

## I

We first address the defendant's claim that the jury's responses to written interrogatories, finding both a design defect and a defect in repair or maintenance, were legally inconsistent. The defendant also claims that the plaintiff failed to prove a design defect, because he presented no evidence that the defect was present since the time the road was constructed. Because we find the resolution of the first claim implicates that of the second claim, we consider them in turn.

## A

Written interrogatories were submitted to the jury. Upon responding affirmatively to the question of whether the plaintiff had proved that the highway was defective, the jury was asked the following interrogatories: "3. Is the defect that you find: (a) A defect in the design of the roadway? If your answer is yes, proceed to question four. (b) A defect in repair or maintenance of the roadway? If your answer is yes, proceed to question five . . . . 5. Do you find that the defect in the roadway was the sole proximate cause of the plaintiff's injuries?" The jury responded affirmatively to each interrogatory. Because the jury found both types of defects, the defendant contends its responses are either inconsistent or an indication that the jury misunderstood the relevant legal principles. This contention is

premised on the notion that a successful claim under § 13a-149 must fall into the category of *either* a design defect *or* a defect in repair or maintenance, but not both. We disagree with the premise underlying the defendant's contention.

This court has defined a "defect" pursuant to § 13a-149 as "*[a]ny* object in . . . the traveled path, which would necessarily obstruct or hinder one in the use of the road . . . or which, from its nature and position, would be likely to produce that result . . . ." (Emphasis added; internal quotation marks omitted.) *Hall* v. *Burns*, 213 Conn. 446, 461–62, 569 A.2d 10 (1990); *Hay* v. *Hill*, 137 Conn. 285, 288, 76 A.2d 924 (1950); *Hewison* v. *New Haven*, 34 Conn. 136, 141 (1867). Although § 13a-149 expressly refers only to liability for defects in repair or maintenance; see footnote 2 of this opinion; this court has long recognized that liability could also be predicated on a design defect. See *Donnelly* v. *Ives*, 159 Conn. 163, 167–68, 268 A.2d 406 (1970); *Perrotti* v. *Bennett*, 94 Conn. 533, 541–42, 109 A. 890 (1920); *Hoyt* v. *Danbury*, 69 Conn. 341, 351–52, 37 A. 1051 (1897).[10] Nothing in our case law suggests that the plaintiff's allegation of a design defect precludes him from also establishing a defect in repair or maintenance. In the present case, the plaintiff alleged both theories in his complaint and submitted evidence in support of each theory at trial.[11] The defendant cites no authority for

[10] The statutory language interpreted by this court in *Hoyt* mirrors the current statutory language. See *Smith* v. *New Haven*, 258 Conn. 56, 61, 779 A.2d 104 (2001) (noting that defective highway statute of 1672 was "similar in both language and import to its progeny, § 13a-149").

[11] In its reply brief, the defendant raises for the first time the issue of whether the plaintiff submitted sufficient evidence to prove that there was a defect in the defendant's repair or maintenance of the road. We do not address this issue on appeal. "It is a well established principle that arguments cannot be raised for the first time in a reply brief." (Internal quotation marks omitted.) *Ramos* v. *Vernon*, 254 Conn. 799, 843–44, 761 A.2d 705 (2000); *State* v. *Garvin*, 242 Conn. 296, 312, 699 A.2d 921 (1997); *State* v. *Hill*, 237 Conn. 81, 97 n.23, 675 A.2d 866 (1996). "Claims of error by an appellant must be raised in his original brief . . . so that the issue as framed by him

the proposition that these theories may be pleaded and proved only in the alternative.

The defendant further argues that the jury's responses constitute a finding that both defects were the sole proximate cause of the plaintiff's injuries, a finding that, according to the defendant, is inherently impossible. The defendant misinterprets the plaintiff's burden with respect to sole proximate cause under § 13a-149. This court first articulated the sole proximate cause standard for liability under the defective highway statute in *Bartram* v. *Sharon,* 71 Conn. 686, 43 A. 143 (1899). In *Bartram,* the plaintiff was a passenger who was injured when the driver of her horse-drawn carriage, who himself had been found guilty of negligence, operated the wagon so that it overturned upon striking a defect in the highway that the defendant town had failed to repair. Id., 687. This court reversed the trial court's judgment in favor of the plaintiff, stating that "a traveler on a highway cannot be injured through a defect in the highway, within the meaning of our statute, when the culpable negligence of a fellow-traveler is a proximate cause of his injury." Id., 697. "[A]n injury caused by the culpable negligence of a traveler, whether to himself or to another, does not happen by means of or through a defect in the highway, even if such defect were a concurring cause. One reason why a person injured through his own carelessness cannot maintain an action against the town is, that the injury caused by his own carelessness is not through or by means of the

can be fully responded to by the appellee in its brief, and so that [an appellate court] can have the full benefit of that written argument." (Internal quotation marks omitted.) *State* v. *Floyd,* 253 Conn. 700, 713 n.12, 756 A.2d 799 (2000). Although the defendant did raise this issue in its motion to set aside the verdict, that action permits the trial court to review its own decision but does not provide a basis for this court's review. See *Salaman* v. *Waterbury,* 246 Conn. 298, 309, 717 A.2d 161 (1998) ("[t]he purpose of the motion for directed verdict with respect to the motions to set aside and for judgment notwithstanding the verdict is to give notice to the trial court").

defect. This reason applies with equal force when the injury is caused through the carelessness of a third person." Id., 695. Thus, the focus with respect to the element of sole proximate cause is whether any factors *other than the municipality's breach of its statutory duty* caused the plaintiff's injuries. In the present case, the jury found that both defects resulted from the municipality's breach of that duty.

The plaintiff points out that, in practice, the defendant's position would lead to an untenable result. We agree. A municipality could, under the defendant's reasoning, assert a concurrent design defect as a defense to a claim for a defect in repair or maintenance. Likewise, a municipality could prevail if it established two different defects of repair or maintenance that concurrently produced injuries to a highway traveler by claiming that neither was the sole proximate cause of the injuries. Thus, under the defendant's interpretation of the sole proximate cause doctrine embodied in § 13a-149, the more culpable the conduct of the municipality, the less likely its liability under the statute. That would be, in our view, a bizarre result. "We ordinarily read statutes with common sense and so as not to yield bizarre results." *Southington* v. *Commercial Union Ins. Co.*, 254 Conn. 348, 360, 757 A.2d 549 (2000); accord *Commission on Human Rights & Opportunities* v. *Sullivan Associates*, 250 Conn. 763, 778, 739 A.2d 238 (1999); *Maciejewski* v. *West Hartford*, 194 Conn. 139, 151–52, 480 A.2d 519 (1984).

Finally, the defendant argues that because the jury did not follow the court's directions to skip over interrogatory 3 (b) if it answered "yes" to question 3 (a), it did not understand the relevant legal principles. Because we have concluded previously that findings of both a design defect and a defect in the maintenance or repair of the road are not legally inconsistent, there is no merit to this argument. Furthermore, "[i]t is not the

function of a court to search the record for conflicting answers in order to take the case away from the jury on a theory that gives equal support to inconsistent and uncertain inferences. When a claim is made that the jury's answers to interrogatories in returning a verdict are inconsistent, the court has the duty to attempt to harmonize the answers." (Internal quotation marks omitted.) *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 270, 698 A.2d 838 (1997); *Norrie* v. *Heil Co.*, 203 Conn. 594, 606, 525 A.2d 1332 (1987). We conclude that the trial court did not abuse its discretion in denying the defendant's motion to set aside the verdict with respect to the jury's responses to the written interrogatories.

## B

The defendant also argues that the plaintiff did not establish a design defect because he failed to present evidence that the defect was present from the time the road was constructed. In support of this position, the defendant relies on language this court used in *Hoyt* v. *Danbury*, supra, 69 Conn. 352, when it first articulated the circumstances in which a claimant could prevail under the defective highway statute where the defect was one of design. In *Hoyt*, this court explained that "[i]f . . . a defect in the plan of construction should be so great as soon to require repairs in order to make the highway safe for travel, a neglect to make these repairs might found an action; but the plaintiff's case would be no stronger than if the road had been originally built in the best manner. So, were the plan of construction adopted one which was totally inadmissible . . . the highway would have been in such a defective condition as to have been out of repair *from the beginning.*" (Emphasis added.) Id.

The defendant argues that the phrase "from the beginning" requires that a plaintiff submit evidence of the

exact age of the road, and evidence that the present defect has existed since its original construction. In the present case, however, the jury's verdict was not predicated solely on a design defect. We previously have concluded that the jury's findings of liability on both design defect and defect in the repair or maintenance of the road were both legally supportable. Consequently, this court need not reach the issue of whether our case law using the phrase "from the beginning" requires a plaintiff to produce such evidence. See *Bortner* v. *Woodbridge*, 250 Conn. 241, 251 n.13, 736 A.2d 104 (1999) (court does not decide issue unnecessary to resolution of case); *Duni* v. *United Technologies Corp.*, 239 Conn. 19, 23 n.5, 682 A.2d 99 (1996) (same).

## II

The defendant's next claim is that the trial court improperly instructed the jury on both ordinary negligence causation and the more stringent sole proximate cause standard applicable to § 13a-149. The defendant contends that the charge is likely to have confused the jury, permitting it to find liability where the defendant had been only a substantial factor in causing the plaintiff's injuries. We disagree that the charge failed adequately to inform the jury as to the plaintiff's burden of proof with respect to sole proximate cause.

We analyze the defendant's claim in light of the firmly established rule that "jury instructions are to be read as a whole, and instructions claimed to be improper are read in the context of the entire charge. . . . A jury charge is to be considered from the standpoint of its effect on the jury in guiding it to a correct verdict. . . . The test to determine if a jury charge is proper is whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Jury instructions need not be exhaustive, perfect or technically accurate,

so long as they are correct in law, adapted to the issues and sufficient for the guidance of the jury." (Internal quotation marks omitted.) *Scanlon* v. *Connecticut Light & Power Co.*, 258 Conn. 436, 446, 782 A.2d 87 (2001); see *Hall* v. *Burns*, supra, 213 Conn. 475; *State* v. *Rouleau*, 204 Conn. 240, 252, 528 A.2d 343 (1987).

The trial court began its charge to the jury by admonishing it to consider the instructions as a whole and not to isolate or ignore any one part. The court then explained that, before instructing the jury on the elements of a cause of action under the defective highway statute, it was going to discuss the law of negligence generally. This discussion included an explanation of proximate cause in which the court stated: "In order for you to find the defendant negligent you must also find that there was proximate cause, and proximate cause will be described as follows . . . . [I]f an act or omission of a party is found to have been a substantial factor in bringing about an injury or a loss, then that act or omission is a proximate cause of the injury or loss."

The defendant argues that this explanation may have communicated to the jury that the defendant could be found liable if it had been merely a substantial factor in causing the plaintiff's injuries, rather than the sole proximate cause of those injuries. This argument is without merit, given the context of the trial court's reference. The court merely contrasted the general law of negligence with its subsequent discussion of § 13a-149, and in the latter discussion, underscored several times the plaintiff's burden of proving sole proximate cause. Moreover, the court explained that its earlier discussion of the general negligence standard of proximate cause was given only to help the jury to discern whether any third person had been a proximate cause

of the plaintiff's injuries.[12] Previously, this court has found similar instructions to be an accurate statement of the burden of proof as long as "[t]he charge upon the question of negligence was in proper co-ordination with and subordination to the main rule of liability under the statute." *Parker* v. *Hartford*, 122 Conn. 500, 506, 190 A. 866 (1937); compare *Gustafson* v. *Meriden*, 103 Conn. 598, 603, 604, 131 A. 437 (1925) (jury charge improper in defective highway action where jury instructed on negligence generally but not sole proximate cause) with *Sullivan* v. *Norwalk*, 28 Conn. App. 449, 457, 612 A.2d 114 (1992) (jury properly charged in § 13a-149 action with respect to negligence). We conclude that the jury charge regarding negligence in the present case likewise was given in the appropriate context.

The defendant also argues that the trial court improperly failed to give the jury instructions it had requested, which incorporated language from a jury charge that this court approved in *Williamson* v. *Commissioner of Transportation*, 209 Conn. 310, 551 A.2d 704 (1988).[13]

---

[12] The jury charge provided in relevant part: "If you find that any act or omission other than the [defendant's] was a proximate cause of the plaintiff's injuries, you must return a verdict for the [defendant], because the [defendant's] breach of its duties cannot be the sole proximate cause if there were any additional cause, which is why I explained the law of negligence before in general. . . . [It is] incumbent upon the plaintiff to prove that the alleged defect was the only cause of his accident. He must prove to you that he was in the exercise of due care at the time of the accident and that he — that his injuries . . . were not due to any negligence on his part or on the part of a third party or any other cause. . . . If you find that the plaintiff or another failed to exercise due care at the time of the accident, then your deliberations should end here, and you should return a verdict in favor of the defendant, because the plaintiff would have failed to prove . . . that the accident and the damages were caused solely or exclusively by the claimed breach of the statutory duty of the defendant. If you attribute any fault to any person or any other causes other than the alleged defects, then you must find for the defendant."

[13] The defendant's charge request used the following language that this court approved in *Williamson*: "If there has been an injury caused by a defect in the highway, and all other elements have been proven, the plaintiff

In *Williamson*, the jury charge included the instruction that "if there is any negligence by the [plaintiff], even one percent, [he] may not recover." (Internal quotation marks omitted.) Id., 321. The defendant contends that an explanation of sole proximate cause in these concise, mathematical percentages would have aided the jury in understanding the plaintiff's burden with respect to causation. We acknowledge that the charge requested was a correct statement of law and may, indeed, have aided the jury's deliberations. We do not consider, however, the trial court's failure to use this precise language to have been a fatal flaw.

"A request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given. A refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance. *State* v. *Gabriel*, 192 Conn. 405, 418, 473 A.2d 300 (1984); *State* v. *Cooper*, 182 Conn. 207, 211, 438 A.2d 418 (1980). *State* v. *Casey*, 201 Conn. 174, 178, 513 A.2d 1183 (1986)." (Internal quotation marks omitted.) *State* v. *Gant*, 231 Conn. 43, 47–48, 646 A.2d 835 (1994), cert. denied, 514 U.S. 1038, 115 S. Ct. 1404, 131 L. Ed. 2d 291 (1995). The substance of the charge given in this case was consistent with the charge that the defendant requested. See footnotes 12 and 13 of this opinion. We conclude, therefore, that

may still not recover unless he shows that there is no negligence, carelessness or inattention by himself or a third person which contributed to such injury. That is to say that even if the road were defective, if there is any negligence by the [plaintiff], even one percent, he may not recover. Likewise, if a third person was careless, and that carelessness caused in any way the plaintiff's injuries, he is not entitled to recover, which likewise, if a third person were careless, negligent, and that caused in any way the plaintiff's injuries, he is not entitled to recover." See *Williamson* v. *Commissioner of Transportation*, supra, 209 Conn. 321. Although the state defective highway statute, General Statutes § 13a-144, not its municipal counterpart, § 13a-149, was at issue in *Williamson*, we have treated cases arising under either statute as persuasive authority for the other. See *Smith* v. *New Haven*, 258 Conn. 56, 64 n.6, 779 A.2d 104 (2001).

the charge did not mislead the jury into finding the defendant liable under a theory of simple negligence. Consequently, the trial court's denial of the defendant's motion to set aside the verdict on its claim regarding the jury charge was not an abuse of discretion.

## III

We next address the defendant's claim that there was insufficient evidence from which the jury could have concluded that the defendant was the sole proximate cause of the plaintiff's injuries. Specifically, the defendant claims that the jury could not have reasonably concluded that Sylvester, the driver of the car in which the plaintiff was a passenger, was free from fault. We disagree.

When reviewing the sufficiency of evidence pursuant to a denial of a motion for a directed verdict, we limit our inquiry to whether the jury reasonably could have concluded, upon the facts found and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established the necessary element. See, e.g., *State* v. *Calonico*, 256 Conn. 135, 139–40, 770 A.2d 454 (2001); *Douglass* v. *95 Pearl Street Corp.*, 157 Conn. 73, 77, 245 A.2d 129 (1968); *Rickert* v. *Fraser*, 152 Conn. 678, 682, 211 A.2d 702 (1965). If there was evidence upon which the jury reasonably could have found liability in accordance with the plaintiff's allegations, the court should not direct the verdict for the defendant. See *Gaudio* v. *Griffin Health Services Corp.*, 249 Conn. 523, 534, 733 A.2d 197 (1999); *Purzycki* v. *Fairfield*, 244 Conn. 101, 112–13, 708 A.2d 937 (1998).

The defendant argues that Sylvester's testimony was not credible and, therefore, that the jury only could have concluded that he was negligent. In support of this argument, the defendant points to Sylvester's testimony that he was blinded by the oncoming vehicle's lights but also that the oncoming vehicle never left its own

travel lane. The defendant also contends that the jury should have concluded that Sylvester was speeding at the time of the accident, despite both his and the plaintiff's testimony to the contrary. According to the defendant, the jury should have inferred that Sylvester was speeding from a photograph offered by the plaintiff of the accident scene that indicated that Sylvester's car left skid marks leading from the road to the utility pole.

Jury determinations with respect to witness credibility should not be disturbed absent compelling evidence to the contrary. See *Gaudio* v. *Griffin Health Services Corp.*, supra, 249 Conn. 534; *Lopez* v. *Price*, 145 Conn. 560, 564, 145 A.2d 127 (1958). We conclude that the jury's finding of sole proximate cause was reasonable in light of the evidence before it.

IV

The defendant's last claim with respect to the trial court's denial of its motion to set aside the verdict is that the trial court improperly precluded the defendant from introducing certain documentary evidence of a settlement between the plaintiff and Liberty Mutual, Sylvester's insurer. The defendant claims that this evidence was critical to impeaching the plaintiff's testimony that he had not made a claim against Sylvester. We agree that the trial court abused its discretion by excluding the settlement documents. We conclude, however, that the error was harmless.

Trial courts have broad discretion in determining the relevancy and admissibility of evidence. *State* v. *Cruz*, 212 Conn. 351, 361, 562 A.2d 1071 (1989); *State* v. *Bryant*, 202 Conn. 676, 688, 523 A.2d 451 (1987); *State* v. *Sharpe*, 195 Conn. 651, 659, 491 A.2d 345 (1985). In order to establish reversible error, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse. *Bauer* v. *Waste Management of Connecticut, Inc.*, 239 Conn. 515, 526, 686 A.2d 481

(1996); *State* v. *Hamilton*, 228 Conn. 234, 244, 636 A.2d 760 (1994); see also C. Tait, Connecticut Evidence (3d Ed. 2001) § 1.33.1, p. 95. In connection with its attempt to impeach the plaintiff, the defendant sought to introduce two exhibits. One of the exhibits consisted of several documents that had been contained in Liberty Mutual's file regarding Sylvester. Included in the file documents were both a letter from Liberty Mutual to Sylvester notifying him of its intention to pay the plaintiff $25,000 in consideration for a release of claims[14] and a release signed by the plaintiff.[15] The other exhibit consisted of computer generated records pertaining to the Sylvester file, which indicated that a check for $25,000 had been issued by Liberty Mutual to the plaintiff for a loss occurring on October 4, 1993, the date of the accident. Both the letter to Sylvester and the computer records referred to the plaintiff as the "claimant." The defendant conceded during the evidentiary hearing that nothing contained in either exhibit was direct evidence of a claim. Its intention, however, was to use the evidence to impeach the plaintiff's statement that he had not made a claim against Sylvester by having the jury infer that the settlement must have been preceded by a claim from the plaintiff.

The trial court excluded the exhibits on the ground that evidence of a settlement could not be introduced without direct evidence of a claim, such as a claim letter from the plaintiff or his attorney. We read this rationale as an assessment by the trial court that evi-

[11] The letter provided in relevant part: "[The plaintiff's] claim is in excess of the [$25,000 per person] minimum [limit] of the insurance which you carry. [The plaintiff] will thus be attempting to pursue an Under Insured Motorist Claim against the policies in his household." The letter further indicated that, after Sylvester signed an attached affidavit that was to be forwarded to the plaintiff's attorney, he would be released from all liability upon Liberty Mutual's payment of $25,000.

[15] The plaintiff testified, outside the presence of the jury, that the signature on the release was his.

dence of a settlement is not sufficiently probative evidence that a claim in fact had been made. We disagree with this assessment.

The proffering witness, Liberty Mutual's claims manager, DeStefano, testified, outside the presence of the jury, that Liberty Mutual would not have entered into a settlement and issued a check in exchange for a release of claims without a party having initiated a claim. On cross-examination by the plaintiff, DeStefano conceded that Liberty Mutual might make a payment for a "nuisance" suit—a claim in which it knows there is no value—just to avoid litigating the claim. This concession, however, supports rather than undermines the likelihood that the settlement was precipitated by a claim, albeit a potentially meritless one.

The defendant claims that had the jury known of the settlement, it could have inferred that a claim preceded the settlement and that, therefore, the plaintiff was lying when he said he had not made a claim against Sylvester. The fact that the jury would have had to rely on inferences to make that determination does not preclude the admission of such evidence. See *State* v. *Wargo*, 255 Conn. 113, 132, 763 A.2d 1 (2000) (witness' statement admissible as long as inference drawn therefrom is reasonable one); *State* v. *Carter*, 196 Conn. 36, 44–45, 490 A.2d 1000 (1985) (even successive inferences permissible if justified by facts). The trial court properly could have excluded such evidence where the connection between the inference and the fact sought to be established was so tenuous as to require the jury to engage in sheer speculation. *State* v. *Boles*, 223 Conn. 535, 549, 613 A.2d 770 (1992); *State* v. *Duntz*, 223 Conn. 207, 233, 613 A.2d 224 (1992). The evidence in the present case was not so speculative, however, in light of the supporting testimony. Therefore, the evidence was probative of the fact that a claim may have been made. See Conn.

Code Evid. § 4-1.[16] Consequently, the jury should have been given the opportunity to consider the evidence in assessing the plaintiff's credibility.

The defendant's burden, however, requires that he prove that the error was such that it likely would have affected the outcome of the case. *Danko* v. *Redway Enterprises, Inc.*, 254 Conn. 369, 383, 757 A.2d 1064 (2000); *Poulos* v. *Pfizer, Inc.*, 244 Conn. 598, 614, 711 A.2d 688 (1998). The defendant's sole claim of harm appears to be his contention that the settlement evidence was relevant to the ultimate issue of sole proximate cause. We conclude that the defendant has not proved that the exclusion of the settlement evidence likely would have affected the jury's determination on this issue.

In order to prove such harm, the defendant would have to demonstrate the likelihood of two things: first, that the jury would have concluded that the plaintiff had lied when he denied making a claim against Sylvester; and second, that the jury would have inferred from that fact that Sylvester was a joint tortfeasor. The likelihood of the jury reaching these conclusions is doubtful in light of other evidence submitted at trial. Sylvester also had testified that the plaintiff had never made a claim against him. Even had the jury disbelieved both the plaintiff and Sylvester, and, thus, concluded that a claim had been made, we are not persuaded that the jury then would have concluded that the defendant was not the sole proximate cause of the plaintiff's injuries. The defendant neither submitted any evidence nor elicited any testimony to prove that Sylvester had been negligent. Liberty Mutual's records contained no evidence of an investigation into the cause of the acci-

---

[16] Section 4-1 of the Code of Connecticut Evidence defines evidence as relevant, and thus probative, if it has "any tendency to make the existence of any fact that is material to the determination . . . more probable or less probable than it would be without the evidence."

dent.[17] Moreover, as noted previously, DeStefano admitted that Liberty Mutual might pay a meritless claim just to avoid litigation. Furthermore, the jury had been presented with evidence of the plaintiff's claim against the power company and was not convinced that another party was a joint tortfeasor solely by virtue of the fact that the plaintiff had asserted that claim. Consequently, we conclude that any abuse of discretion in excluding the settlement evidence was harmless.[18]

## V

The defendant's final claim is that the trial court improperly denied its motion for remittitur. The defendant had sought to reduce the jury verdict by the amounts the plaintiff had received in settlement with the power company and Liberty Mutual. The defendant concedes that the trial court, in ruling on its motion, was bound to follow this court's decision in *Peck* v. *Jacquemin*, supra, 196 Conn. 53. In *Peck*, the court considered General Statutes § 52-216a,[19] which bars the

[17] DeStefano testified, out of the presence of the jury, that Liberty Mutual would have investigated a claim to determine whether its insured was negligent. He offered no testimony or documents, however, to show that any such investigation was performed in the present case.

[18] The defendant contends for the first time in his reply brief that the evidence should have been admitted under the business records exception to the hearsay rule. As we previously noted; see footnote 11 of this opinion; this court will not address a claim made for the first time in a reply brief. Furthermore, as we already have concluded that the exclusion of the evidence was harmless, this argument would not affect our decision.

[19] General Statutes § 52-216a provides: "Reading of agreements or releases to jury prohibited. Adjustments for excessive and inadequate verdicts permitted. An agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of the cause of action against any other joint tortfeasors, nor shall any other agreement not to sue or release of claim among any plaintiffs or defendants in the action be read or in any other way introduced to a jury. If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. If the court concludes that the verdict

reduction of jury verdicts by amounts received from pretrial settlements unless the trial court finds the verdict excessive as a matter of law.[20] On appeal, the defendant asks this court to reconsider *Peck* and, instead, to apply the common-law rule, which permits a trial court to deduct such settlements so as to preclude the plaintiff from a windfall of double recovery. Although we disagree with the trial court's reliance on *Peck* in the present case, we agree with its decision to deny the defendant's motion for remittitur for the reasons stated herein.

The issue before the court in *Peck* was the constitutionality of § 52-216a in light of this court's earlier decision in *Seals* v. *Hickey,* 186 Conn. 337, 441 A.2d 604 (1982). The statute provides in relevant part that "[a]n agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action shall not be . . . introduced in evidence by either party . . . during the trial of the cause of action *against any other joint tortfeasors* . . . ." (Emphasis added.) General Statutes § 52-216a. The express language of § 52-216a suggests that the statute applies solely to actions in which there are, or could be, joint tortfeasors. As such, it is inapplicable to an action brought pursuant to the defective highway statute in which the municipality is the sole tortfeasor. Consequently, *Peck* does not control the disposition of a motion for remittitur in a defective highway action and, therefore, we need not reconsider it.

---

is inadequate as a matter of law, it shall order an additur, and upon failure of the party so ordered to add the amount ordered by the court, it shall set aside the verdict and order a new trial. This section shall not prohibit the introduction of such agreement or release in a trial to the court."

[20] The trial court actually cited *Mauro* v. *Yale-New Haven Hospital,* 31 Conn. App. 584, 627 A.2d 443 (1993), as its authority. *Mauro,* however, simply reaffirmed that *Peck* reflects the current interpretation of § 52-216a. See id., 588–90.

The defendant concedes that the jury verdict was not excessive as a matter of law. It argues, however, that the common-law rule allowing for a verdict reduction to prevent a plaintiff's double recovery is particularly appropriate in a defective highway action, wherein the defendant theoretically is not entitled to apportionment as a sole tortfeasor. The defendant's reasoning, however, leads to the opposite conclusion.

As we previously have stated, a plaintiff may prevail under § 13a-149 only if the jury determines that the highway defect was the sole proximate cause of the plaintiff's injuries. We recently addressed the related issue of whether the sole proximate cause requirement contained in § 13a-149 precludes an action for indemnification. See *Smith* v. *New Haven*, 258 Conn. 56, 779 A.2d 104 (2001). In *Smith*, the defendant city sought to implead a third party whom it claimed actively and negligently had caused the plaintiff's injuries. Id., 58. We affirmed the trial court's judgment rendering summary judgment in favor of the third party, noting that two tortfeasors are a prerequisite for a viable claim of indemnity. Id., 66. As such, we concluded that "[a] finding of two culpable tortfeasors . . . is logically inconsistent with our definition of sole proximate cause because a determination that the defect in question is the sole proximate cause of the plaintiff's injuries implicitly relieves any third parties from liability. . . . Put another way, the presence of third party negligence necessarily results in a finding that the defect was not the sole proximate cause of a plaintiff's injuries. Such a determination would relieve the municipality of all liability, thereby vitiating the basis for indemnification. Because § 13a-149 either renders the municipality, and the municipality alone, liable to the plaintiff, or exculpates the municipality entirely, the equitable obligation to indemnify a municipality . . . does not exist in actions brought under § 13a-149." Id., 66–67. The same

rationale applicable in *Smith* that precluded the municipality from seeking indemnity likewise precludes the defendant in the present case from being entitled, as a matter of law, to a reduction for the settlement amounts received by the plaintiff.

Moreover, our case law on apportionment, which, like indemnity, requires joint tortfeasors, supports a similar conclusion. Where a joint tortfeasor is entitled to apportionment, settlements are not deducted dollar for dollar from the jury verdict. *Collins* v. *Colonial Penn Ins. Co.*, 257 Conn. 718, 734–35, 778 A.2d 899 (2001) (discussing effect of settlement in uninsured motorist claim in relation to subsequent award of damages). Instead, "the award against the remaining tortfeasor is reduced by the percentage of negligence attributable to the settling tortfeasor." Id., 735. In the present case, the jury determined that, as the sole proximate cause of the plaintiff's injuries, the defendant was the only party to whom negligence is attributable.

Furthermore, we find it persuasive that settlements expressly have been excluded from the statutory definition of "collateral sources" for purposes of civil actions, either in tort or in contract, in which a plaintiff seeks to recover damages for personal injuries. See General Statutes §§ 52-225a[21] and 52-

---

[21] General Statutes § 52-225a provides: "Reduction in economic damages in personal injury and wrongful death actions for collateral source payments. (a) In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal injury or wrongful death occurring on or after October 1, 1987, or (2) personal injury or wrongful death, arising out of the rendition of professional services by a health care provider, occurring on or after October 1, 1985, and prior to October 1, 1986, if the action was filed on or after October 1, 1987, and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h, by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section, except that there shall be no reduction for (1) a collateral

225b.[22] Although a highway defect claim is a statutory cause of action in which a plaintiff may seek relief for either personal injury or property damage, it is nonetheless a civil tort action. In light of the foregoing reasons, we conclude that the trial court properly denied the defendant's motion for remittitur for a reduction due to settlement amounts received by the plaintiff.

The judgment is affirmed.

In this opinion the other justices concurred.

---

source for which a right of subrogation exists and (2) that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence pursuant to section 52-572h.

"(b) Upon a finding of liability and an awarding of damages by the trier of fact and before the court enters judgment, the court shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant as of the date the court enters judgment.

"(c) The court shall receive evidence from the claimant and any other appropriate person concerning any amount which has been paid, contributed, or forfeited, as of the date the court enters judgment, by, or on behalf of, the claimant or members of his immediate family to secure his right to any collateral source benefit which he has received as a result of such injury or death."

[22] General Statutes § 52-225b provides: " 'Collateral sources' defined. For purposes of sections 52-225a to 52-225c, inclusive: 'Collateral sources' means any payments made to the claimant, or on his behalf, by or pursuant to: (1) Any health or sickness insurance, automobile accident insurance that provides health benefits, and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by him or provided by others; or (2) any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the costs of hospital, medical, dental or other health care services. 'Collateral sources' *do not include amounts received by a claimant as a settlement.*" (Emphasis added.)